Curia, per Frost, J.
The appeal calls in question the validity of the Ordinance of the City Council which imposes, the penalty sued for, on two grounds. First, that the ordinance is unconstitutional — and, secondly, that in its provisions, the City Council exceded the power granted to them by the charter.
The constitutional objection has not been made in the argument; and, in the opinion of court, is untenable.
The first section of the Ordinance prohibits any person or persons, body politic or corporate, to establish any place or places for the burial of the dead, except.such as are already established for such purposes, under a penalty of five thousand dollars. Under this section the action is brought.
The ,second section prohibits the burial of the dead in any other burial ground or place, within the limits of the City, except such as are already set apart and devoted to such purposes.
The charter of the city vests in the City Council, “full power and authority, from time to time, under their common seal, to make and establish such bye-laws, rules and ordinances respecting the harbor, streets, lanes, public buildings, work-houses, markets, wharves, public houses, carriages, wagons, carts, drays, pumps, buckets, fire engines, the care of the poor, the regulation of seamen or disorderly people, negroes, and in general, every other bye-law or regulation that , shall appear to them requisite and necessary for the security, welfare and convenience of the city, or for preserving peace, order and good government within the same.”
The rules for the construction of the words, parts and clauses of Statutes, are so general that they do not carry any great weight of authority in their application to any particular case. But this remark is not true, or at least not to the same extent, in the application of these rules to different classes of Statutes, as public and private, penal and remedial, such as relate to matters of mere administrative regulation, and such as are designed to effect some purpose of great public convenience. A statute made pro bono publico, shall be construed in such manner that it may, as far as possible, attain the end proposed. Accordingly, the New River Water Act was held, although only the City of London is mentioned, to extend to places adjacent, because it is said, all statutes made for the convenience of the public ought to have a liberal construction — to be expounded largely and not with restrictions. The Statute 23 Hy. 8, c. 10, enacted that “all conveyances to the use of parish churches, guilds and companies, erected out of devotion, &c. and all other like uses and intents,” should be void; and the question was whether a devise, on condition to found a free school, and for the sustenance of certain poor men and women., was against the *308 Statute. And it was adjudged the Statute did not extend to the devise. In the Magdalen College case, though it was admitted that, by the general rule of construction, if the ]£¿ng }-,e not iiame(j jn a Statute, he shall be exempted from it, because the law gives the King this prerogative and dignity, that he is not included in the common words “ person or Persons) bodies politic or corporate,” yet it was unanimously resolved, that general statutes which provide for the maintenance of religion, the advancement of learning and the relief of the poor, shall be extended generally, according to their words, and include the King. Lord Coke refers to the decision in Porter’s case, as shewing that, by construction of law, lands conveyed for the advancement of learning and maintenance of the poor, have been preserved and maintained, against the general'words of the Statute; and he adds, it is the office of the Judges to make such a construction's will redress the mischief and advance the remedy; and to suppress all evasions which may be made, in order to continue the mischief; that the law will never, by any construction, advance a private interest to the destruction of a public; but, on the contrary, will advance the public interest as far as it is possible, though it be to the prejudice of a private one.
It cannot be disputed that the Act incorporating the City of Charleston is an Act pro bono publico, and may claim the liberal construction applied to such statutes; so that the public welfare and convenience shall not, if they can be maintained without violating the plain meaning of the statute, be surrendered to a private interest. By the application of this rule, it is to be determined whether the City Council has the power to prohibit the establishment of other burial places within the limits of the city, than such as the City Council may authorize and appoint; and forbid the burial of the dead in any other than the burial places which may be established by its authority.
In all ages, and among all people, the burial of the dead has been the subject of religious and public care, that it should be done with due respect and in a manner not offensive to survivors. The funeral rights of the Egyptians were ordered by the priests. In Greece they were, in some measure, the care of Government. In Rome, by the law of the twelve tables, it was ordered “ hominem mortuum in urbe ne sepelito neve vicinitate." All nations, the most refined and the most barbarous, in all times, have manifested a sedulous care and attention to the rites of sepulture. Reverence for the dead, decency, public health, comfort and convenience, are all concerned in the proper regulation of burial. The evils resulting from its neglect are, principally, to be apprehended in the crowded population of cities, and it, therefore, most properly pertains to municipal government. In the preamble *309 of the Act incorporating the city, the Legislature declared, (when the city was inconsiderable, compared with its present extent) “ that it had been found impracticable, and, probably, would become thereafter more so, for them to devise, consider, deliberate on, and determine all such laws and tions as emergencies, or the local circumstances of the city may, from time to time, require,” and thus relinquished to the municipal authorities of the city, their power of legislation in all those matters that concerned its order, convenience and welfare, which they conceived they were not qualified to exercise.
When power is conferred on the City Council to pass every bye-law or regulation that shall appear to them requisite and necessary for the security, welfare and convenience of the city, can it be the proper construction of the Act to except, from this large and undefined ground, the authority to regulate the burial of the dead? This authority is expressed in the very terms of the grant. In what can the welfare and the convenience of the corporators be more concerned than in this ? May not the City Council' regulate the time of burial so that it shall not be done at unseasonable hours of the night ?May it not protect the health of the citizens against the noxious effluvia of decomposition, by ordering the manner of interment? And, most of all, may it not enforce a becoming reverence for the dead, and maintain and cherish that sentiment among the citizens which familiarity and neglect have so great tendency to impair, by prohibiting interment in private gardens, and yards, and bye-places of the city; and shall the City Council be restrained in the exercise of this power, so necessary to the public welfare, and so salutary in its moral influence, by a private interest ? Shall the owner of a city lot be upheld, by the court, in his appeal to vindicate his absolute dominion in the soil, and his right to use it as he pleases ? Such a claim would equal, in intensity of selfishness, the example put by Lord Bacon, of the man who would set his neighbour’s house a-fire to roast his egg. A construction of the charter of the city, resulting in the recognition of a claim so irrational, would be rebuked by the vigorous common sense of the rule, that the law will never, by any construction, advance a private interest to the destruction of a public; but, on the contrary, will advance the public interest, as far as it is possible, though it be to the prejudice of a private one.
If the power to prohibit interments in particular places, be granted, a power results to license interments in other places; and if interments in any place may be prohibited, they may be prohibited in the place or ground which the defendants have established for that purpose.
It has been argued that the general grant of power should *310 be restricted to the subjects particularly enumerated. But it is plain these are mentioned pnly as the most obvious sub-of municipal care. Any attempt to enumerate them all, must have been futile. The Legislature, sensible how incomplete the enumeration was, in order to supply all omissions, added the power “ in general, to make and establish every other bye-law or regulation that shall appear to them requisite and necessary for the welfare,” &c. The words, “ and in general,” can have no other meaning than to negative any implied limitation of the power to the particulars mentioned, and to declare an unrestricted grant. The same intention is expressed in the power to pass “ every other” bye-law, &c. The grant of a general power could not be made in terms more explicit and free from ambiguity, than when it is given to make rules and ordinances on particular subjects, “ and, in general,” to make and establish “ every other bye-law or regulation, that shall appear to them requisite and necessary for the security, welfare and convenience of the city, or for preserving peace, order and good government within the same.”
In deciding the question of the power of the City Council to pass the ordinance, the necessity or expediency of its enactment has not been considered. That has been assumed. If the power exists, the court has no jurisdiction to control the discretion of the City Council in its exercise, provided it be exercised consistently with the laws and constitution of the State. No violation of either is apparent in the provisions of the ordinance. It is not necessary to the existence of the power, that there be a present occasion for its exercise. It is sufficient that a future emergency may demand it. The power to make every and-any ordinance or regulation that may be necessary, will be supplied from the grant of the charter, when circumstances may call for its exercise. The province of the court is, merely to declare whether the power is granted. It is sufficient to establish the grant that the power is or may be necessary for the welfare and government of the City. The City Council has exclusively the authority to determine when the occasion may exist for its exercise, and the manner in which it should be applied. If an ordinance be exceptionable on these grounds, an appeal against its enforcement lies only to the corporators. An argument conclusively confirmatory of the policy and necessity of the ordinance, is afforded by the fact, that during fourteen years it has remained in force, though opportunities to repeal it have been presented to the corporators by as many annual elections.
It has been objected further, that the City Council has no power to prohibit by ordinance, what was before lawful. If it be meant that the City Council cannot prohibit the exercise *311 of any right, privilege or exemption, claimed by Legislative grant or sanction, the objection has no application to thei ordinance. The defendants assert no lawful claim, under any previous ordinance of the city; and if they did, it is plain the power which enacted an ordinance may repeal it, unless the rights or privileges it conferred might be claimed in the nature of a contract. And if by what is lawful, is intended what is not prohibited by law, the objection would divest the City Council of the whole power to make ordinances for police regulation.
That the ordinance operates partially, is another objection which has been suggested. An impression of this kind has, probably, induced the complaint of the defendants. But it creates no personal disability, nor exacts a penalty against individuals. It lays down one clear and certain rule for all persons, and is both known and invariable, and may claim the encomiums which Lord Coke bestows on a Statute which “ uno ore omnes alio quit ur.” If the ordinance were directed against the Wentworth Street Baptist Church, the complaint might be just, that it created a personal disability and enacted individual penalties. But all other persons are equally prohibited, and would equally be amenable for a violation of the ordinance if they should do what it forbids.
The motion is granted.
Richardson, O’Neall and Evans, JJ. concurred.

Motion granted.